UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-12618 (NMG) |
| | : | |
| v. | : | |
| | : | |
| KARNIG H. DURGARIAN, JR., et al., | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANT KEVIN CRAIN'S MEMORANDUM
## OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

Defendant Kevin F. Crain respectfully submits this memorandum of law in support of his motion to dismiss the First, Second, and Fifth Claims against him in the Complaint by the Securities and Exchange Commission ("SEC").[1]  The Joint Memorandum of Law filed on behalf of all six defendants demonstrates that the SEC has failed to properly allege fraudulent conduct and scienter under § 10(b) of the Securities Exchange Act of 1934 and § 17(a) of the Securities Act of 1933; failed to establish the defendants' status as "offerors" or "sellers" as required under § 17(a); and failed to allege an underlying primary violation by Putnam Fiduciary Trust Company ("PFTC") as required to state an aiding and abetting claim under § 10(b).

This Memorandum addresses two additional grounds for dismissal of the claims against Crain.[2]  First, even assuming that the SEC alleges a "scheme to defraud" under § 10(b) and § 17(a), it fails to properly allege that Crain committed a manipulative act in furtherance of it (First and Second Claims).  Second, even assuming that the SEC alleges a primary violation of § 10(b) by PFTC, it fails to properly allege that Crain knowingly provided substantial assistance to PFTC

---

[1] The Third and Fourth Claims are not asserted against him.

[2] The factual allegations contained herein are from the Complaint which, for purposes of this motion only, are accepted as true.  *See* Fed. R. Civ. P. 12(b)(6).

(Fifth Claim).  For all of these reasons, the SEC's claims against Crain must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

I.     **THE SEC FAILS TO ALLEGE THAT CRAIN MADE A MATERIAL MISSTATEMENT OR OMISSION OR COMMITTED A MANIPULATIVE ACT.**

The SEC fails to allege with the required specificity that Crain committed any actionable misrepresentation, omission, or manipulative act.

A.     **The SEC Does Not Allege Any Actionable Misstatement by Crain.**

As explained in Part I.A.1 of the Joint Memorandum, the central allegations in the Complaint involve the "as of" transactions and accounting adjustments that the defendants allegedly knew about, directed, or executed in January 2001.  None of these allegations involves any material misstatement by any defendant, let alone one sufficient to establish liability under § 10(b) or § 17(a).

The SEC makes only three allegations in the Complaint that involve statements made personally by Crain.  First, the SEC alleges that on January 3 and 4, 2001, Crain discussed with others "the Cardinal employee's mistaken belief that the Combined Plan had benefited from the January 3, 2001 market appreciation," and agreed with others "that the Combined Plan should not bear the loss resulting from PFTC's one-day delay."  Complaint ¶ 36.  Second, the SEC alleges that on January 18, 2002 and February 7, 2003 Crain certified to an outside auditor that he was "unaware of any uncorrected errors, frauds or illegal acts attributable to" PFTC that had affected its clients.  *Id.* ¶ 66-67.  Third, the SEC alleges that in January 2004 Crain left a voice mail for an internal auditor at PFTC's corporate parent stating that the conduct of January 5, 2001 had the "fingerprints" of "financial fraud."  *Id.* ¶ 73.

Neither the first nor third of these alleged statements was false or misleading.  With

respect to the first, even assuming the SEC's characterization of the January 5 discussion to be accurate, the SEC does not allege that the statement at issue was false.  Similarly, the third alleged statement — Crain's voice mail to auditor in January 2004 — in no way constitutes fraud.  To the contrary, the SEC acknowledges that it was only this statement by Crain that "revealed" the alleged misconduct by PFTC.  *See id.* p.21.[3]

With respect to the second alleged set of statements — Crain's certifications to an outside auditor in January 2002 and February 2003 — the SEC argues that they were false because it contends he was aware of "uncorrected errors, frauds or illegal acts attributable to PFTC."  But the SEC's assertion merely begs the question of whether the steps taken in January 2001 to correct the alleged error by other PFTC employees regarding the Cardinal and Allegiance DC Plans actually constituted fraud or an illegal act.  As explained in Part I of the Joint Memorandum, the allegations in the Complaint wholly fail to establish any such underlying fraud or illegal act.  Furthermore, as explained in Part IV of the Joint Memorandum, even assuming that Crain's alleged certifications were false, they fail to satisfy the "in connection with" requirement of § 10(b) and the "in the offer or sale of securities" requirement of § 17(a).  The SEC alleges that Crain made the certifications more than a year (in one case, two years) after the transactions in this case occurred.  In addition, the SEC does not allege that Crain knew or should have known that his statements to the auditor would be disseminated to the public, or that his statements were in fact disseminated to the public.  For these reasons, the SEC does not properly plead any actionable misrepresentation by Crain.

---

[3] While Rule 12(b)(6) requires that the SEC's allegations be accepted as true at this stage of the proceedings, if this case proceeds beyond the dismissal stage, the evidence will show that the characterization of the message in ¶ 73 of the Complaint is misleading and out of context.

**B.       The SEC Does Not Allege Any Actionable Omission By Crain.**

"Silence absent a duty to disclose is not misleading under Rule 10b-5."  *SEC v. Tambone*, ___ F. Supp. 2d ___, ___, 2006 WL 488570, at \*6 (D. Mass. Jan. 27, 2006) (quoting *Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 81 (D. Mass. 2005)).  The First Circuit has identified only three situations in which a defendant has a duty to disclose under § 10(b) and § 17(a):  "1) when a corporate insider trades on confidential information, 2) when a corporation has made inaccurate, incomplete or misleading prior disclosures, and 3) when a statute or regulation requires disclosure."  *Id.* (citing *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26-27 (1st Cir. 1987)).

Here, the SEC does not allege that Crain traded on confidential information.  It also does not allege that Crain was required to make a disclosure under any particular statute or regulation.  Finally, the SEC does not identify any inaccurate, incomplete, or misleading prior disclosure made by Crain which he had a duty to clarify or correct.  As this Court held in *Tambone*, "an individual owes a duty to clarify a misleading statement only if that statement is attributable to the individual."  *Id.* (citing *SEC v. Druffner*, 353 F. Supp. 2d 141, 148 (D. Mass. 2005); *SEC v. PIMCO Advisors Fund Management LLC*, 341 F. Supp. 2d 454, 467 (S.D.N.Y. 2004)).  The SEC therefore fails to establish that Crain had a duty to disclose for which he may now be held liable.

**C.       The SEC Does Not Allege That Crain Committed a Manipulative Act as Part of a "Scheme to Defraud."**

The only remaining theory under which the SEC could establish Crain's liability as a primary violator of § 10(b) and § 17(a) rests on the premise that the defendants engaged in a "scheme to defraud."  As explained in Part I.A.3 of the Joint Memorandum, the SEC has failed to allege such a scheme under the controlling case law.  Because the SEC acknowledges that PFTC has regularly used "as of" transactions "to correct trading errors," Complaint ¶ 38, and from "time to time" made adjustments to either increase or decrease expense accruals, *id.* ¶ 53, it

cannot maintain a § 10(b) and § 17(a) claim on the theory that the alleged use of "as of" transactions and accounting adjustments in this case, to correct what the SEC alleges was an error by other PFTC employees, involved clearly illegal conduct.

Even assuming that the SEC did properly allege a scheme to defraud, it has not pleaded sufficient facts to show that Crain committed a manipulative act in furtherance of it.  Allegations regarding a "complex fraudulent scheme" may not be used "as a means to get around the pleading requirements for the individual Defendants."  *SEC v. Yuen*, 221 F.R.D. 631, 636 (C.D. Cal. 2004); *accord SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 377 (S.D.N.Y. 2006); *In re Alstom SA Securities Litigation*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005).  The SEC may not collectively assign liability to a group of defendants under this theory, or establish liability against Crain based on the boilerplate assertion that he "participated" or was "complicit" in some collective scheme.  Instead, the SEC must specifically establish that Crain committed himself a manipulative or deceptive act.  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) (holding that § 10(b) "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act"); *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997) ("Allegations of 'assisting,' 'participating in,' 'complicity in' and similar synonyms used throughout the complaint all fall within the prohibitive bar of *Central Bank*.").

Here, the SEC has alleged absolutely nothing about what Crain personally did to advance the alleged scheme to defraud.  It does not allege that Crain committed a single act to devise, approve, or implement the transactions allegedly devised by someone else.  It does not allege that Crain had any role in or control over the "as of" transactions.  Nor does it allege that Crain had any role in or control over the accounting adjustments.

The SEC does not even allege any facts that would establish Crain's authority to cause the "as of" transactions or accounting adjustments. Unlike, for example, defendant Durgarian (whom the SEC describes as "Chief of Operations" for PFTC and "Principal Executive Officer" of the relevant funds, Complaint ¶ 9) or defendant McCracken (the head of the division that includes "the unit that performed fund accounting for the Putnam mutual funds," *id.* ¶ 10), the SEC does not allege that Crain exercised responsibility as a decision maker in any relevant capacity.

To the contrary, the Complaint accurately establishes that Crain was outside the relevant lines of command. The Complaint states that Hogan — who allegedly devised and coordinated the "as of" transactions, *id.* ¶¶ 43-47 — reported to Childs, *id.* ¶ 11, who reported to Papa, *id.* ¶ 14, who reported to Durgarian, *id.* ¶ 12. Crain, who reported separately to Papa, *id.* ¶ 13, had no authority over any of these persons. Similarly, Crain had no authority over McCracken, who reported to Durgarian, *id.* ¶ 10, and allegedly implemented the accounting adjustments at Durgarian's direction, ¶¶ 54-56.

Rather than allege a manipulative act personally committed by Crain, the SEC attempts to establish his liability through generalized allegations about what "the Defendants" — as an undifferentiated group — knew and did. For example, it alleges that "each" of the defendants "was aware" of PFTC's "penny-per-share" policy, Complaint ¶ 41, and that "Defendants" were "aware that the impact of the 'as of' trades in the Research Fund would be a loss of more than one penny per share," *id.* ¶ 50. It alleges that on or about January 5, 2001 all of the defendants attended a meeting or meetings at which they discussed the loss to the Combined Plan, *id.* ¶ 42; listened to defendant Hogan describe the "as of" transactions, *id.* ¶ 43; agreed to the "as of" transactions, *id.*; and designated defendant Hogan to coordinate the transactions, *id.* *See also id.*

¶ 50 (stating that transactions "had been discussed and agreed-upon among all of Defendants").

These generalized allegations fail to state with required specificity a proper basis for Crain's liability as a primary violator of § 10(b) and § 17(a).  As one court observed:

> [E]ach defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.  Without this requirement, the policies of giving fair notice to, and protecting the reputation of, each defendant would be frustrated — parties might be improperly swept into the discovery stage of a litigation with other parties against whom fraud has been properly alleged.  As a result, Rule 9(b) is not satisfied by a complaint in which "'defendants are clumped together in vague allegations.'"

*Dietrich v. Bauer*, 76 F. Supp. 2d 312, 329 (S.D.N.Y. 1999) (citations omitted); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 428-29 (D.N.J. 1999) ("The plaintiffs here lump the defendants together and make general conclusory allegations of wrongdoing.  By this, the plaintiffs do not afford the defendants the necessary opportunity to know exactly of what each is accused.").

The SEC cannot lump Crain together with the rest of the named defendants simply because he allegedly attended a meeting or meetings with them on January 5.  *See Pegasus Holdings v. Veterinary Ctrs. of America, Inc.*, 38 F. Supp. 2d 1158, 1164 (C.D. Cal. 1998) ("[A]ttendance at certain meetings is not enough to establish a functional relationship to a fraudulent scheme.").[4]  None of the allegations in the Complaint demonstrates that Crain had any "<u>functional</u> relationship" to the alleged scheme.  *Id.* (emphasis supplied).  Nor can the SEC base his liability on the generalized allegation that the "as of" transactions were "discussed and

---

[4] As the SEC is aware, other PFTC employees at Crain's level in the company hierarchy attended the meeting(s) on January 5, but were not charged with securities fraud by the SEC.

agreed-upon among all of Defendants" at this meeting or meetings.  The SEC provides no further explanation as to how such agreement was reached or conveyed.  Was a vote taken?  Did Crain nod his head?  Was he even asked for his opinion on the matter?  The Complaint does not say.  *See Pegasus Holdings*, 38 F. Supp. 2d at 1164 ("Conclusory allegations of 'willful consent' are insufficient to state a cause of action without factual information as to how and when the . . . defendants 'consented,' to whom they expressed, exhibited, or otherwise demonstrated their consent.").  Furthermore, the SEC does not even try to explain how Crain's attendance at this meeting or meetings constituted a "manipulative or deceptive" act sufficient to establish his liability as a primary violator.  *See Central Bank*, 511 U.S. at 177-78.

Importantly, this is not a case where the particularity requirement of Rule 9(b) can be relaxed because the information giving rise to securities fraud is exclusively held by the defendants.  As in *Tambone*, the SEC conducted an extensive investigation prior to the filing of its Complaint in this case.  In its Initial Disclosures (filed Feb. 9, 2006), the SEC lists twenty-four testimony transcripts generated during its investigation and eighty-seven persons "likely to have discoverable information that the Commission may use to support its claims."  Thus, the argument that the SEC can circumvent Rule 9(b) because all relevant information lies with the defendants "has no application to this case."  *See Tambone*, 2006 WL 488570, at *3; *accord SEC v. Yuen*, 221 F.R.D. at 637 (holding that failure to "plead any specifics as to the individual Defendants' alleged participation in the scheme" was unacceptable "given the SEC's substantial pre-filing investigatory powers and the significant discovery already conducted in this case").

For these reasons, and for the reasons stated in the Joint Memorandum, the SEC has failed to allege that Crain personally made a material misstatement or omission or committed a manipulative act.  Its primary violation claims against Crain must therefore be dismissed.

## II.   THE SEC FAILS TO ALLEGE FACTS ESTABLISHING THAT CRAIN KNOWINGLY AND SUBSTANTIALLY ASSISTED A PRIMARY VIOLATION OF § 10(b) BY PFTC.

In its Fifth Claim, the SEC contends that "each of Defendants" aided and abetted PFTC's uncharged violations of § 10(b). Complaint ¶ 93. As explained in Part III.A of the Joint Memorandum, however, the SEC fails to make clear what PFTC's violations were. As with its primary violation claims, the SEC must satisfy Rule 9(b)'s heightened pleading standard in alleging an aiding and abetting claim, *see Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 91 (D. Mass. 2002) (citations omitted), and its conclusory assertion that PFTC violated § 10(b) "[a]s set forth herein" falls far short of what this standard requires.

Furthermore, the SEC has failed to establish that Crain "knowingly provide[d] substantial assistance" to PFTC in any primary violation. 15 U.S.C. § 78t(e). *See SEC v. Cedric Kushner Promotions, Inc.*, ___ F. Supp. 2d ___, 2006 WL 397903, at *9 (S.D.N.Y. Feb. 17, 2006); *SEC v. KPMG LLP.*, 412 F. Supp. 2d 349, 382-83 (S.D.N.Y. 2006). As this memorandum has already discussed, the SEC does not allege that Crain made a false or misleading statement in connection with the transactions at issue. *See* Part I.A, *supra*. It does not allege that Crain was required to make a disclosure under any statute or regulation, or that Crain had a duty to clarify any misleading statement that he earlier made. *See* Part I.B, *supra*. It does not allege that Crain committed a manipulative act. *See* Part I.C, *supra*.

The only remaining conceivable basis for aiding and abetting liability would be the allegation that Crain knowingly provided substantial assistance to PFTC through his inaction or silence. In *Tambone*, this Court observed that "a defendant's inaction or silence may qualify where the defendant recklessly violates an independent duty to act or manifests a conscious intention to further the principal violation." *Tambone*, 2006 WL 488570, at *8 (citing *Austin v.*

*Bradley, Barry & Tarlow, P.C.*, 836 F. Supp. 36, 39 (D. Mass. 1993)).  Because the SEC does not establish that Crain was under an independent duty to disclose the transactions at issue, "the SEC's complaint must allege, with particularity, that [Crain's] silence or inaction was consciously intended to further the principal violation."  *Id.*

> In determining whether silence or inaction was accompanied by conscious intent to assist the primary violation, courts must determine whether the defendant threw "in his lot with the primary violators" and "benefited" from the alleged silence.  *Austin*, 836 F. Supp. at 39-40.  Courts have been "particularly exacting" in making these determinations and "economic motivation alone is too remote and minimal" to demonstrate conscious intent.

*Tambone*, 2006 WL 488570, at *8.  *See also Cedric Kushner Promotions*, 2006 WL 397903, at *9 ("In alleging the requisite substantial assistance by the aider and abettor, the complaint must allege that the acts of the aider and abettor proximately caused the harm on which the primary liability is predicated.").

Here, the SEC makes no allegation suggesting that Crain had any economic motivation at all to assist the alleged primary violator, much less the specific benefit contemplated by the case law.  The SEC also fails to show that Crain's silence or inaction proximately caused the harm at issue.  Once again, the SEC offers the Court "too little" to sustain its aiding and abetting claim against Crain.  *Tambone*, 2006 WL 488570, at *9.  The claim must be dismissed.

## CONCLUSION

For the reasons stated above and in the Joint Memorandum, the First, Second, and Fifth

Claims against Kevin F. Crain in the Complaint should be dismissed.

Respectfully submitted,

KEVIN F. CRAIN,
By his attorney,


/s/ Anthony Mirenda
Anthony Mirenda, BBO #550587
Robert E. Toone, BBO #663249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  March 31, 2006


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing and
paper copies will be sent to those indicated as non-registered participants on March 31, 2006.

 /s/ Anthony Mirenda