UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Securities & Exchange Commission,          )
                                           )
                Plaintiff,                 )
                                           )
v.                                         )          Civil Action No. 05 CA 12618 NMG
                                           )
Karnig H. Durgarian, Jr.,                  )
Donald F. McCracken,                       )
Ronald B. Hogan, Virginia A. Papa,         )          **ORAL ARGUMENT REQUESTED**
Kevin F. Crain, and Sandra G. Childs,      )
                                           )
                Defendants.                )
                                           )

## DEFENDANT RONALD B. HOGAN'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS COMPLAINT

Defendant Ronald B. Hogan respectfully submits this Memorandum of Law in Support of

his Motion to Dismiss the SEC's Complaint ("Motion") in the above-referenced matter pursuant

to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Mr. Hogan incorporates herein and

adopts by reference the Joint Memorandum of Law in Support of Motions to Dismiss by

Defendants Karnig H. Durgarian, Jr., Donald F. McCracken, Ronald B. Hogan, Virginia A. Papa,

Kevin F. Crain, and Sandra G. Childs ("Joint Memorandum"). In addition, as set forth below,

the SEC's allegations concerning Mr. Hogan's involvement with as-of transactions and

discussions about expense account adjustments fail to state a claim for primary or aiding and

abetting liability against him under § 10(b) of the Exchange Act, Rule 10b-5,[1] or § 17(a) of the

Securities Act. The SEC's use of pejorative verbs in an effort to attribute a fraudulent purpose to

---

[1] All references herein to § 10(b) are intended to also reference Rule 10b-5.

Mr. Hogan's actions is not sufficient to state a claim against him. Accordingly, the Complaint against Mr. Hogan must be dismissed.

## FACTUAL BACKGROUND[2]

The SEC alleges that Mr. Hogan was an employee and senior officer of Putnam Fiduciary Trust Company ("PFTC"), namely, a vice president of the new business implementation unit who reported to Sandra Childs, who in turn reported to Virginia Papa, who reported to Karnig Durgarian. Complaint ¶¶ 1, 9-14. Mr. Hogan was junior to the other defendants, and he is not alleged to have been a Managing Director or a supervisor of any defendant. Complaint ¶¶ 9-14. In addition, the SEC does not allege that Mr. Hogan worked on or had any authority concerning the sales or client service side of PFTC's business.

The SEC alleges that Mr. Hogan "concocted" as-of transactions and, after discussions at meetings attended by his supervisor and others more senior to him, was designated to coordinate such transactions. Complaint ¶¶ 36-37, 42-47, 50. As set forth in the Joint Memorandum, the SEC has not alleged that such as-of transactions were *per se* illegal. Nor has the SEC alleged that Mr. Hogan made any statements to Cardinal or Allegiance about when their investments would be made or that he had any duty to tell Cardinal about the alleged one-day delay.

Moreover, the SEC's allegations of Mr. Hogan's involvement in any other allegedly fraudulent conduct are spare at best. Concerning the expense adjustments, the SEC alleges only that Mr. Hogan discussed the possibility of expense adjustments with others senior to him and at meetings at which his supervisor was present, and was present at meetings attended by others, including his supervisor, when others more senior to him discussed adjustments. See Complaint ¶¶ 52, 54, 56. It does not allege that Mr. Hogan had knowledge of or took any action concerning

---

[2] See also Joint Memorandum, Statement of Facts; for purposes of this Motion only, Mr. Hogan accepts as true the factual assertions set forth in the complaint. See SEC v. Tambone, No. 05-10247-NMG, 2006 WL 488570, at *2 (D. Mass. Jan 27, 2006).

2

the unspecified "unwarranted and inappropriate" adjustments of which the SEC complains that were allegedly made by others. See Complaint ¶ 57. Concerning Franklin, the SEC alleges that Mr. Hogan, with the agreement of the other defendants, tried, but failed, to persuade Franklin Resources, Inc. to execute "as of" transactions. Complaint ¶¶ 58-61.[3] Moreover, the SEC does not aver that Mr. Hogan derived any benefit from any of the conduct alleged in the Complaint.

## ARGUMENT

### I. THE SEC HAS NOT PLED ANY ACTIONABLE MISSTATEMENTS, OMISSIONS, OR A SCHEME TO DEFRAUD AGAINST MR. HOGAN OR THAT MR. HOGAN ACTED WITH THE REQUISITE SCIENTER FOR PRIMARY VIOLATIONS OF SECTIONS 10(b) AND 17(a).[4]

To establish fraudulent conduct under § 10(b) of the Exchange Act and § 17(a) of the Securities Act, the SEC must prove that Mr. Hogan "1) made an untrue statement of material fact, 2) omitted a fact that rendered a prior statement misleading, or 3) committed a manipulative or deceptive act as part of a scheme to defraud." SEC v. Tambone, No. 05-10247-NMG, 2006 WL 488570, at *3 (D. Mass. Jan 27, 2006) (emphasis in original); see also Joint Memorandum Sections I, I.A. (discussing pleading requirements). With regard to Mr. Hogan, the SEC's allegations are especially deficient and fail to plead any actionable misstatements, omissions, or a scheme to defraud, or that Mr. Hogan acted with the requisite scienter.[5]

---

[3] The SEC does not allege that Mr. Hogan submitted any false certifications to auditors, had any knowledge of any such allegedly false certifications, or otherwise concealed such alleged conduct.

[4] The arguments concerning the other independent reason why the SEC's § 17(a) claims must fail, set forth in Section II of the Joint Memorandum, will not be repeated here.

[5] In fact, Mr. Hogan cooperated fully with the auditors' and the SEC's investigations of events alleged in the Complaint.

A.      The SEC Has Not Alleged that Mr. Hogan Made Any Untrue Statements

To be liable for a misstatement, Mr. Hogan "must have personally made . . . an allegedly

untrue statement." Tambone, 2006 WL 488570, at *4. The Complaint fails to identify any

allegedly untrue statements made by Mr. Hogan, which must be pled with specificity pursuant to

Fed. R. Civ. P. 9(b). Tambone, 2006 WL 488570, at *2 (complaint must specify "1) the

allegedly fraudulent statements, 2) the identity of the speaker, 3) where and when the statements

were made, and 4) how the statements were fraudulent"). As discussed in Section I.A.1. of the

Joint Memorandum, the SEC has not alleged that Mr. Hogan made any misstatements to

Cardinal or to anyone else in a prospectus or other public disclosure. Further, the SEC does not

allege that Mr. Hogan made any false certifications to auditors.

B.      The SEC Has Not Alleged Sufficient Facts that Mr. Hogan Made Any Fraudulent
        Omissions.

Likewise, the Complaint fails to allege facts sufficient to state a claim based on an

omission by Mr. Hogan. See Tambone, 2006 WL 488570, at *6; Joint Memorandum Section

I.A.2. "Silence absent a duty to disclose, is not misleading under Rule 10b-5." Tambone, 2006

WL 488570, at *6 (quoting Garvey v. Arkoosh, 354 F.Supp.2d 73, 81 (D. Mass. 2005). A duty

to disclose in this case could arise only if Mr. Hogan made a prior inaccurate or misleading

disclosure. Id.; Joint Memorandum Section I.A.2. Since the Complaint does not allege that Mr.

Hogan made any such inaccurate or misleading disclosure, see Section I.A., infra, and Section

I.A.1. of Joint Memorandum, Mr. Hogan had no duty to disclose and cannot be liable for an

omission.

4

C.    The SEC Has Not Alleged Sufficient Facts to State a Claim Against Mr. Hogan
      for a Scheme to Defraud.

Although the Complaint alleges that Mr. Hogan "concocted" and was designated to

"coordinate" as-of transactions, such allegations are insufficient to allege a scheme to defraud by

Mr. Hogan under § 10(b) and § 17(a) because such transactions are not illegal *per se*. See Joint

Memorandum Sections I.A.3.a-b. The SEC's mere use of pejorative verbs, such as "concocted,"

do not satisfy the pleading requirements for a scheme to defraud. See id. As the Complaint

acknowledges, such transactions are used to correct trading errors (Complaint ¶ 38) and are

condoned by PFTC policy. See Complaint ¶¶ 39-41; see also Joint Memorandum Section

I.A.3.b.

As to the allegations concerning the expense adjustments, in addition to the fact that such

allegations are not pled with the requisite specificity, the SEC does not allege that Mr. Hogan

directed, implemented or had any knowledge of the "unwarranted and inappropriate" expense

adjustments of which the SEC complains. See Joint Memorandum Section I.A.3.b. The general

allegations – that Mr. Hogan discussed expense adjustments (not unwarranted or inappropriate

expense adjustments) with others senior to him and at meetings at which his supervisor was

present, and was present at meetings attended by others, including his supervisor, when others

more senior to him discussed adjustments (not unwarranted or inappropriate adjustments) – are

not enough. See Pegasus Holdings v. Veterinary Centers of America, Inc., 38 F.Supp.2d 1158,

1164 (C.D. Cal. 1998) (allegations of attendance at meetings and consent to certain actions are

insufficient, without particularized allegations of wrongful conduct). Accordingly, Mr. Hogan's

alleged conduct cannot constitute a scheme to defraud proscribed by Exchange Act § 10(b) and

Securities Act § 17(a). See Tambone, 2006 WL 488570, at *7-8 (scheme to defraud must

involve a clearly illegal practice).

D.     The Complaint Fails To Allege that Mr. Hogan Acted with the Requisite Scienter for a Violation of § 10(b) and § 17(a)(1).

To properly plead scienter, the Complaint must allege facts that give rise to a reasonable and strong inference that Mr. Hogan consciously intended to defraud or acted with a high degree of recklessness. See Joint Memorandum Section I.B. (outlining scienter requirements).

Recklessness is

> a highly unreasonable omission involving not merely simple, or even excusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it.

SEC v. Fife, 311 F.3d 1, 9-10 (1st Cir. 2002) (quoting Greebel v. FTP Software, 194 F.3d 185, 198 (1st Cir. 1999)).

The alleged facts concerning Mr. Hogan discussed above are insufficient to give rise to such an inference of scienter. There is no alleged "context" or "mix of facts" that show circumstances giving rise to a fraudulent intent. See Greebel v. FTP Software, Inc., 194 F.3d 185, 197-98 (1st Cir. 1999) (to properly plead scienter, insider trading must be in a context where defendants had incentives and trading was unusual); Aldridge v. A.T. Cross Corp., 284 F.3d 72, 82-84 (1st Cir. 2002) (identifying circumstances giving rise to a strong inference of scienter). Certainly there is no context or mix of facts to suggest that Mr. Hogan acted with a high degree of recklessness where, as here, certain actions allegedly taken by him were agreed to by his supervisor and others more senior to him, and were consistent with PFTC policy. Complaint ¶¶ 38-40, 43-44, 50, 58. In addition, there are no allegations that Mr. Hogan profited from the alleged conduct. See SEC v. Steadman, 967 F.2d 636, 642 (D.C. Cir. 1992) (declining to find scienter because defendants had no motive or anything to gain from the allegations). To find scienter properly plead in this case, therefore, would require that an inference could be

6

drawn that Mr. Hogan meant to defraud "for the sheer joy of it" rather than to gain anything, which is illogical. Id. The SEC's pejorative characterizations of Mr. Hogan's actions (i.e., "concocted") do not satisfy these pleading requirements; they do nothing more than presuppose fraudulent intent without any factual basis. Moreover, where, as here, the alleged conduct at issue – namely, being involved with as-of transactions and discussing expense adjustments – is not *per se* illegal, the SEC must allege an especially clear fraudulent purpose to sufficiently plead scienter. See SEC v. Pimco Advisors Fund Management LLC, 341 F.Supp.2d 454, 469-70 (S.D.N.Y. 2004) (scienter insufficiently plead because market timing is not *per se* illegal and defendants did not have knowledge of fraudulent purpose); see also In re Credit Suisse First Boston Corp., 431 F.3d 36, 49 (1st Cir. 2005) ("Scienter allegations do not pass the 'strong inference' test when, viewed in light of the complaint as a whole, there are legitimate explanations for the behavior that are equally convincing.") This the SEC has not done. For these reasons, the Complaint fails to state a claim against Mr. Hogan for violating §10(b) and §17(a).

## II. The Complaint Fails to Allege Aiding and Abetting Liability of Mr. Hogan with the Requisite Particularity and Scienter.

The SEC's only remaining claim against Mr. Hogan is its Fifth Claim, aiding and abetting PFTC's uncharged violations of Exchange Act § 10(b) and Rule 10b-5. To establish this claim, the SEC must show "(1) the commission of a violation of § 10(b) or Rule 10b-5 by the primary party; (2) the defendant's general awareness that his role was part of an overall activity that is improper; and (3) knowing and substantial assistance of the primary violation by the defendant." SEC v. Druffner, 353 F.Supp.2d 141, 150 (D. Mass. 2005); see also Joint Memorandum Sections III., III.B. (discussing pleading requirements for aiding and abetting liability). In addition to the fact that the Complaint does not sufficiently plead PFTC's primary

violation, see Joint Memorandum Section III.A., the Complaint fails to allege with sufficient particularity that Mr. Hogan was generally aware that his alleged role was part of an overall fraudulent activity or that he knowingly and substantially assisted PFTC's primary violation.

The Complaint does not sufficiently allege that Mr. Hogan had an "awareness that his role was part of an overall activity that is improper...." Druffner, 353 F.Supp.2d at 150. Its allegations that Mr. Hogan knew about, "concocted" and coordinated the as-of transactions are not enough, where, as here, the SEC acknowledges that such transactions are not *per se* illegal, were condoned by PFTC policy, and the particular as-of transactions were agreed to by Mr. Hogan's supervisor and others senior to him. Complaint at ¶ 38-40, 43-44, 50. Also, even if the SEC had alleged that the expense adjustments were fraudulent, which it has not, the SEC has failed to allege that Mr. Hogan had knowledge of which expense adjustments were made or that such expense adjustments were improper. See Joint Memorandum Section I.A.3.b. Rather, the Complaint merely alleges that Mr. Hogan discussed expense adjustments (not unwarranted or inappropriate expense adjustments) with others senior to him and at meetings at which his supervisor was present, and was present at meetings attended by others, including his supervisor, when others more senior to him discussed expense adjustments (not unwarranted or inappropriate expense adjustments). Complaint ¶¶ 52-57. This is not enough. Moreover, the SEC has not alleged that Mr. Hogan had any knowledge or played any role in false certifications to auditors. Complaint ¶¶ 62-71.

For the same reasons, the Complaint fails to allege sufficiently that Mr. Hogan "knowingly and substantially assisted in the primary violation." Druffner, 353 F.Supp.2d at 150. Therefore, his alleged conduct cannot be "a substantial causal factor in the perpetuation of the underlying fraud," if any. See SEC v. Cedric Kushner Promotions, Inc., No. 04-CV-2324 (TPG),

8

2006 WL 397903, at *10 (S.D.N.Y. Feb. 17, 2006) (finding no substantial assistance because defendant's role was limited and did not extend to other alleged fraudulent acts). Any silence on Mr. Hogan's part cannot form the basis for allegations of knowing and substantial assistance where he had no duty to disclose and the Complaint does not allege with particularity that his "silence or inaction was consciously intended to further the principal violation." Tambone, 2006 WL 488570, at *8-9. The allegations in the Complaint do not pass muster because they do not state that Mr. Hogan "threw 'in his lot with the primary violators' and 'benefited' from the alleged silence." Tambone, 2006 WL 488570, at *8. In these ways, the Complaint also does not allege with particularity the higher level of scienter required by the 1995 amendment to the Exchange Act (codified at § 20(e)) for aiding and abetting liability, namely, "knowing misconduct," as opposed to a high level of recklessness. Cedric Kushner Promotions, Inc., 2006 WL 397903, at *8-9. Consequently, the SEC's Fifth Claim must be dismissed based on its failure to set forth the claim with particularity and allege facts giving rise to a reasonable and strong inference of "knowing misconduct" by Mr. Hogan.

## CONCLUSION

WHEREFORE, Defendant Ronald Hogan respectfully requests that the Court grant his Motion to Dismiss and dismiss the Complaint in its entirety, with prejudice.

Respectfully submitted,

RONALD B. HOGAN,
By their attorneys,

_/s/    Jamie L. Wacks_
Bruce A. Singal, BBO #464420
Jamie L. Wacks, BBO #641183
Donoghue, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108
(617) 720-5090

Dated: March 31, 2006

## CERTIFICATE OF SERVICE

I, Jamie L. Wacks, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 31st day of March, 2006.

_/s/   Jamie L. Wacks_
Jamie L. Wacks

10