UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-12618 (NMG) |
| | : | |
| v. | : | |
| | : | |
| KARNIG H. DURGARIAN, JR., et al., | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| Defendants. | : | |

**DEFENDANT KEVIN CRAIN'S REPLY TO THE SEC's**
**MEMORANDUM IN OPPOSITION TO HIS MOTION TO DISMISS**

Defendant Kevin F. Crain respectfully submits this reply to the memorandum filed by the Securities and Exchange Commission in opposition to his motion to dismiss.

**I.    THE SEC CANNOT ESTABLISH MISSTATEMENT**
**OR OMISSION LIABILITY AGAINST CRAIN.**

The SEC does not contend that Crain made any affirmative misstatement sufficient to establish liability under § 10(b) or § 17(a).  *See* Opp. at 14-17.  Instead, the SEC claims that Crain is individually liable based on its expansive revision to omission liability.

As explained in the Joint Reply (at 1-3), however, in addition to being unsupported by the allegations in the Complaint, the SEC's novel "fiduciary duty/sub-agent" theory contradicts rulings from this Court, the First Circuit, and the Supreme Court about the limited circumstances in which a duty to disclose arises under § 10(b) or § 17(a).  The SEC does not contend that Crain traded on confidential information; was required to make a disclosure under any statute or regulation; or made any inaccurate, incomplete, or misleading prior disclosure which he had a duty to correct.  *See Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26-27 (1st Cir. 1987); *SEC v. Tambone*, 417 F. Supp. 2d 127, 134 (D. Mass. 2006).

II.   **THE SEC CANNOT ESTABLISH SCHEME-TO-DEFRAUD
OR AIDING AND ABETTING LIABILITY AGAINST CRAIN.**

The SEC's only remaining theory against Crain depends on its ability to allege (1) a
"scheme to defraud" based on the alleged execution of "as of" transactions; and (2) a
"manipulative act" that Crain personally committed in furtherance of this scheme.  Because its
allegations fail on both counts, the SEC's Complaint must be dismissed.

A.     **The SEC Has Failed to Allege An Actionable Scheme to Defraud.**

As explained in the Joint Reply (at 3-7), the SEC has failed to allege an actionable
scheme to defraud under § 10(b) or § 17(a).  In short, notwithstanding the SEC's new attempt to
characterize the alleged response to the "one-day delay" as "stealing," the alleged "as of"
transactions and accrual adjustments clearly do not amount to "the kind of sham transactions
which have been held to qualify as schemes to defraud."  *Tambone*, 417 F. Supp. 2d at 136.  The
SEC's sweeping and unfounded expansion of scheme-to-defraud liability would allow plaintiffs
to circumvent the elements of misstatement and omission liability in most cases and proceed
against any member of the securities industry who was even tangentially involved in an act or
transaction that, while not illegal in itself, was allegedly done for an "improper" purpose.  *See*
Joint Reply at 6-7.

B.     **The SEC Has Failed to Allege An Actionable Manipulative Act by Crain.**

Furthermore, the SEC has not pleaded sufficient facts to show that Crain committed a
manipulative act in furtherance of any purported scheme to defraud.

In its forty-four page opposition, the SEC offers but a single paragraph (Opp. at 37) to
describe the supposed manipulative acts that Crain allegedly committed to support his primary
liability under its "scheme to defraud" theory.  The SEC also lists in bullet form (Opp. at 34) the
same general points in arguing that Crain "knowingly provided substantial assistance" to PFTC's

uncharged primary violation, for purposes of establishing his liability as an aider and abettor.

The SEC rests its case on just three contentions:  First, it argues (Opp. at 34) that Crain "failed to make disclosures to the Combined Plan and Putnam Funds despite duty to do so." Second, the SEC argues that Crain, "together with the other defendants" (Opp. at 37) or, alternatively, "with others" (Opp. at 34), "agreed" to carry out Hogan's plan to use "as of" transactions and "directed" Hogan to coordinate the transactions.  *See* Opp. at 34, 37.  Third, it argues (Opp. at 34, 37) that Crain committed a manipulative act by certifying to an outside auditor in January 2002 and February 2003 that he was unaware of fraud or uncorrected errors attributable to PFTC.

The SEC's first contention, which it makes for all six defendants (*see* Opp. at 33-34), fails because it rests on the expansive and legally unfounded theory of omission liability, discussed above and in the Joint Reply (at 1-3).  Neither of the SEC's two other contentions is sufficient to establish Crain's liability under § 10(b) or § 17(a).

  **1.**  **Rule 9(b) Prohibits the SEC from Relying on Conclusory Allegations about What Crain Agreed to "Together with the Other Defendants."**

Federal Rule of Civil Procedure 9(b) requires the SEC to show that Crain <u>personally</u> made an actionable misstatement, material omission, or manipulative act.  *See Tambone*, 417 F. Supp. 2d at 130-32.  Vague, conclusory allegations about what "the defendants" did in the aggregate are insufficient to establish liability.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *SEC v. Yuen*, 221 F.R.D. 631, 636 (C.D. Cal. 2004) (rejecting "general and conclusory allegations against the Defendants" where SEC claims "Defendants were part of some ill-defined 'scheme'"); *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 329 (S.D.N.Y. 1999) ("[E]ach defendant named in the complaint is entitled to be apprised of the

circumstances surrounding the fraudulent conduct with which he individually stands charged.") (citations omitted); *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 428-29 (D.N.J. 1999) ("The plaintiffs here lump the defendants together and make general conclusory allegations of wrongdoing. By this, the plaintiffs do not afford the defendants the necessary opportunity to know exactly of what each is accused."); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1443 (S.D. Cal. 1988) (plaintiff cannot lump defendants together and treat them as a "wrongdoing monolith").

In an effort to paper over the lack of any substance to the SEC's allegations against Crain, the SEC points to Federal Rule of Civil Procedure 8(a), claiming (Opp. at 37 n.20) that it need only give "a short and plain statement of the charges." But this position ignores the clear dictate of Rule 9(b), which stands as an exception to the general rule of Rule 8(a). Rule 8(a) is not meant to undo the strictures of Rule 9(b). Furthermore, this Court has observed, the First Circuit "has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions." *Tambone*, 417 F. Supp. 2d at 131 (quoting *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999)).

The SEC's effort must be rejected here, just as it was rejected in *Tambone*. In that case, the SEC argued that the "strict command" of Rule 9(b) should be interpreted "alongside" the "short and plain statement" rule of Rule 8(a), but the Court plainly rejected the SEC's end-run around Rule 9(b). *See id.*[1] Yet, incredibly, the SEC now defends its failure to allege Crain's fraudulent conduct with particularity on the ground that "Rule 8(a) requires a short and plain

---

[1] In *Tambone* the SEC also argued that the particularity requirement of Rule 9(b) should be "relaxed" because "information giving rise to securities fraud is exclusively held by the defendants." *Tambone*, 417 F. Supp. 2d at 131. This Court held that the SEC's extensive pre-filing discovery refuted its contention that critical information remained exclusively in the defendants' control. *Id.* The SEC does not seem to try that tack here, and, in any event, as Crain noted in his initial memorandum (at 8), the SEC's pre-filing investigation in this case was at least as extensive as it was in *Tambone*.

statement of the charges." Presumably the SEC learned nothing from *Tambone*. There is simply

no basis for the argument that Rule 8(a), not Rule 9(b), applies.

The SEC argues (Opp. at 37 n.20) that where defendants "committed substantially

identical acts," it is not required to "repeat the same sentence eight [*sic*] times, once for each

defendant." This is a straw-man argument. Rule 9(b) does not require that generalized

allegations be repeated for each individual defendant. Rather, it requires that each defendant's

fraudulent conduct be alleged with particularity.

The SEC's allegations plainly do not satisfy Rule 9(b). It has alleged nothing about what

Crain personally did to advance the alleged scheme to defraud. It does not describe in the

Complaint a single act committed by Crain to devise, approve, implement, or control the "as of"

transactions allegedly devised by someone else. Nor does the SEC describe any involvement by

Crain, no matter how tangential, in the accounting adjustments alleged in ¶¶ 52-57.

The SEC alleges only that Crain attended a meeting (or meetings) where the "as of"

transactions were discussed. *See* Complaint ¶ 43. As Crain explained in his initial memorandum

(at 7-8), an individual's mere attendance at a meeting is insufficient to establish his functional

relationship to an fraudulent scheme. Tacking on a conclusory allegation that, in attending the

meeting, Crain "agreed" to the so-called scheme "together with the other defendants" (Opp. at

37) adds nothing. The SEC presents no case law refuting this proposition.

The SEC argues that Crain committed a manipulative act when "Defendants agreed to

execute defendant Hogan's plan and designated defendant Hogan to coordinate the transactions."

Complaint ¶ 43. This allegation fails to identify what Crain personally did to agree or to

designate Hogan. *See Pegasus Holdings v. Veterinary Ctrs. of America, Inc.*, 38 F. Supp. 2d

1158, 1164 (C.D. Cal. 1998) ("Conclusory allegations of 'willful consent' are insufficient to

state a cause of action without factual information as to how and when the . . . defendants 'consented,' to whom they expressed, exhibited, or otherwise demonstrated their consent."). It also fails to make any allegation that Crain had authority within PFTC to cause the plan to take effect or to designate Hogan to do anything.

Unlike other defendants in the case, whom the SEC alleges directed or executed certain transactions or at least worked in some relevant line of command, the generalized allegation against Crain in ¶ 43 is not supported by other parts of the Complaint. In its brief, the SEC makes at least some meager efforts to point to the other defendants' authority in arguing for their liability. See Opp. at 35 n.18 (stating that Childs "instructed Hogan (who reported to her)"); Opp. at 38 (McCracken was "head of fund accounting" and "designated Hogan to coordinate the transactions"); Opp. at 39 (Hogan "received approval from superiors"); Opp. at 40 ("Durgarian was the head of PFTC at the time and the most senior executive to participate in the meetings at which the scheme was hatched and agreed upon."). By contrast, the SEC does not allege <u>any</u> facts establishing Crain's authority to cause any of the transactions to take effect. If anything, the Complaint accurately establishes that Crain was <u>outside</u> the relevant lines of command. *See* Initial Memo. at 6.

Because the Complaint does not allege what Crain personally did that constitutes fraudulent conduct, it fails the particularity requirement of Rule 9(b).

        **2.**        **The January 2002 and February 2003 Certifications Do Not Constitute a Manipulative Act Committed "in Connection with" the January 2001 Transactions.**

In the defendants' joint memorandum, defendants Childs, Crain, and Papa explained why the certifications they allegedly made in January 2002 and February 2003 failed to satisfy either the "in connection with" requirement of § 10(b) or the "in the sale of securities" requirement of §

17(a).  First, the alleged certifications were made more than a year after the transactions in this case occurred.  Joint Memo. at 27-29.  Second, the SEC does not allege that the defendants knew or should have known that their statements would be disseminated to the public and, indeed, does not allege that the statements were disseminated to the public.  *Id.* at 29-30.

In response, the SEC accuses Crain and others (Opp. at 26) of trying to "slice and dice the allegations, divorcing certain parts of the overall scheme from others."  The SEC argues (Opp. at 28) that the certifications establish liability not because they are "independently actionable misstatements," but because they were "manipulative or deceptive acts that formed part of the scheme to defraud."  The certifications advanced the fraudulent scheme, the SEC argues (Opp. at 27), by helping to conceal it "for three years — until defendant Crain voluntarily informed PFTC's internal audit department about it."  In other words, it is the SEC's position that Crain should be held liable as a primary violator for transactions that occurred in January 2001 and which he voluntarily disclosed in January 2004, on the ground that he did not disclose the transactions sooner:  *i.e.*, in January 2002 or February 2003.

It is highly questionable whether a certification made in the course of an unrelated internal audit — addressing the "internal controls of the defined contribution plan servicing unit" — can ever qualify as a "manipulative act" in furtherance of a fraudulent scheme.  The SEC cites no case law establishing this proposition.  Furthermore, as defendants noted in their joint memorandum (at 26-27), the SEC's assertion that the certifications of Childs, Crain, and Papa were false merely begs the question as to whether these defendants were aware of "uncorrected errors, frauds or illegal acts attributable to" PFTC.  In response, the SEC argues in a footnote (Opp. at 13 n.8) that the certifications were false "regardless of whether the January 2001 conduct is construed as a fraud," because "the Combined Plan was never made whole (*i.e.*, the

error corrected)." If the January 2001 conduct was not fraudulent, however, there was no fraudulent scheme for Crain and the others to have advanced![2] The SEC's unsupported and circular reasoning provides no basis for its claim that the January 2002 or February 2003 certifications constituted "manipulative acts."

In any event, the alleged certifications cannot stand as Crain's only manipulative act since the first certification occurred more than twelve months after the allegedly unlawful transactions. "Where the only manipulative or deceptive acts identified in a complaint occur after a challenged securities purchase or sale, a court must dismiss the complaint as failing to state a cause of action for federal securities fraud." *Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F. Supp. 1066, 1080 (S.D.N.Y. 1987). *Cf. SEC v. Zandford*, 535 U.S. 813, 820 (2002) (holding that a broker's alleged sale of his customers' securities with intent to misappropriate the proceeds satisfied the "in connection with" requirement of § 10(b) because the broker's "fraud coincided with the sales themselves") (emphasis added). In addition, as explained in defendants' joint memorandum (at 29-30), there is no allegation that Crain knew or should have know that the results of this audit would be publicly disseminated. Congress never intended § 10(b) and § 17(a) to establish liability for acts so removed in time and unrelated in substance from the purchase or sale of securities.

In its effort to circumvent the "in connection with" requirement, the SEC cites (Opp. at 27) the ruling in *SEC v. Holschuh*, 694 F.2d 130 (7th Cir. 1982). In *Craig v. First Am. Capital Res., Inc.*, 740 F. Supp. 530 (N.D. Ill. 1990), the court rejected the plaintiff's reliance on

---

[2] Moreover, it is far from evident from the facts alleged in the Complaint that making the Combined Plan "whole" was the only means by which the alleged one-day delay could have been corrected. It is entirely possible, for instance, that PFTC was contractually required only to make reasonable efforts to obtain a certain day's pricing, and exercising such efforts satisfied its obligations, regardless of the outcome.

*Holschuh* as follows:

> Craig argues that Bitler's statements are actionable even though they occurred
> after the securities purchases.  Citing *SEC v. Holschuh*, 694 F.2d 130 (7th Cir.
> 1982), Craig claims that "post-purchase representations may still be actionable if
> they are part of an overall scheme to defraud by concealing the fraud and
> preventing its detection."  *Holschuh*, however, does not stand for that proposition.
> In fact, the *Holschuh* court suggested that post-purchase representations are not
> actionable.  The court stated:
>
> > [Defendant's argument] that a violation of the securities laws may
> > not be based on events occurring after a sale has been completed,
> > because such events could not have influenced the decisions of
> > investors and cannot satisfy the requirement of being "in
> > connection with the purchase or sale of any security [,]" . . . might
> > have merit were it true that the district court predicated its finding
> > of fraud solely upon [defendant's] post-sale activities.
>
> *Id.* at 143.  The *Holschuh* court expressly held that it was the defendant's conduct
> prior to the sale which satisfied the "in connection with" requirement, and that the
> defendant's conduct after the sale was relevant only because it was evidence of
> the defendant's overall fraudulent scheme.  *Id.* at 143-44.

*Craig*, 740 F. Supp. at 535-36.  Because the defendant's allegedly fraudulent conduct did not

occur until after the securities transaction had been executed, the *Craig* court held that there was

"no foundation" for the claim that the defendant violated § 10(b).  *Id.* at 536.  *See also Arst v.*

*Stifel, Nicolaus & Co.*, 86 F.3d 973 (10th Cir. 1996) (failure to give seller name of buyer several

months after stock sale was not actionable because act or omission was not done "in connection

with" sale).  Similarly, the January 2002 and February 2003 audit certifications provide no

foundation for establishing Crain's liability for the transactions carried out by others in January

2001.

In its brief (Opp. at 28), the SEC urges the Court to avoid "slavish satisfaction of these

judicially-fashioned elements."  But the SEC's efforts to base Crain's liability on these unrelated

certifications demonstrate precisely why it is so dangerous to circumvent the normal pleading

requirements in § 10(b) and § 17(a) cases.  *See* Joint Memo. at 6-7.  Under the SEC's view of

scheme-to-defraud liability, any participation in an internal corporate audit — no matter how distant in time or unrelated in subject matter — functions as a manipulative act for purposes of establishing the participant's liability in the prior scheme, so long as some generalized knowledge of what happened earlier is alleged.  The SEC's view, unsupported by the case law, would expand the scope of § 10(b) and § 17(a) far beyond Congress' intent.  This Court should reject it.

**CONCLUSION**

For the reasons stated above, in Crain's initial memorandum, and in the joint briefs filed by all defendants, the SEC's claims against Crain should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

> Respectfully submitted,
>
> KEVIN F. CRAIN,
> By his attorney,
>
> /s/ Anthony Mirenda
> Anthony Mirenda, BBO #550587
> Robert E. Toone, BBO #663249
> Jennifer A. Cardello, BBO #657253
> FOLEY HOAG LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> (617) 832-1000

Dated:  June 30, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 30, 2006.

> /s/ Anthony Mirenda